## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.R.B., A MINOR BY AND THROUGH HER PARENTS AND NATURAL GUARDIANS, SEAN AND STEPHANIE BURNS (h/w), and SEAN AND STEPHANIE BURNS (h/w) in their own right, | CIVIL ACTION<br><br>NO.<br><br>**JURY TRIAL DEMANDED** |
|       Plaintiffs | |
| vs. | |
| THE MALVERN SCHOOL D/B/A THE MALVERN SCHOOL OF VOORHEES, INC., BUSY BEES NORTH AMERICA D/B/A BUSY BEES MONTESSORI AND CHILDCARE CENTER LLC, and BRIGHTPATH KIDS D/B/A BRIGHTPATH EARLY LEARNING, LLC, | |
|       Defendants. | |

### PLAINTIFFS' CIVIL ACTION COMPLAINT

Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), (collectively hereinafter "**Plaintiffs**"), in their own right, by and through their attorneys, Fleck Eckert Klein McGarry LLC, hereby file this Civil Action Complaint against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Inc. (hereinafter "**Malvern**"), Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC (hereinafter "**BBCC**"), and  BrightPath Kids d/b/a BrightPath Early Learning, LLC (hereinafter "**BrightPath**") ( collectively hereinafter "**Defendants**"), and in support thereof, aver as follows

### PARTIES

1.    Plaintiff S.R.B. (hereinafter "**S.R.B.**" or "**Minor-Plaintiff**"), is a minor infant, who at the time of this filing, is ten (10) months old, and resides with her parents and natural guardians, Plaintiffs Sean and Stephanie Burns (hereinafter collectively "**Plaintiff-Parents**").

2.      Plaintiff-Parents are a married couple, and are the parents of S.R.B., residing at 57 Holly Oak Drive, Voorhees, New Jersey 08043.

3.      Upon information and belief, Malvern is a business corporation organized under the laws of the Commonwealth of Pennsylvania with its corporate headquarters located at 20 Creek Road, Glen Mills, Delaware County, Pennsylvania 19342. A true and correct copy of the PA Department of State Search for Malvern is attached hereto and incorporated herein as **Exhibit "A"**.

4.      On Malvern's website, Malvern advertises that it has locations in Pennsylvania and New Jersey, and that it is "Part of the Busy Bees and BrightPath Family." [1]

5.      One of the locations that Malvern advertises on its website that it owns and/or operates is located at 515 Centennial Boulevard, Voorhees, New Jersey 08043.

6.      Upon information and belief, BBCC is a domestic limited liability company organized under the laws of the State of Delaware with a registered address of 30815 Phillips Branch Road, Millsboro, Delaware 19966.  A true and correct copy of the DE Department of State Search for BBCC is attached hereto and incorporated herein as **Exhibit "B"**.

7.      One of the locations that BBCC advertises that it owns and/or operates is located at 515 Centennial Boulevard, Voorhees, New Jersey 08043. [2]

8.      Upon information and belief, BrightPath is a domestic limited liability company organized under the laws of the State of Delaware with a registered address of 251 Little Falls Drive, Wilmington, Delaware 19808.  A true and correct copy of the DE Department of State Search for BrightPath is attached hereto and incorporated herein as **Exhibit "C"**.

---

[1] More Than Daycare | The Malvern School Preschool in PA & NJ (https://malvernschool.com/about-us/).
[2] Locations | Busy Bees North America (https://www.busybeesna.com/locations).

9.      One of the locations that BrightPath advertises that it owns and/or operates is located at 515 Centennial Boulevard, Voorhees, New Jersey 08043.[3]

10.      At all times relevant hereto, Defendants exclusively owned, operated, controlled, and maintained an early childhood education school located at 515 Centennial Boulevard, Voorhees, New Jersey 08043 (hereinafter the "**School**").

11.      At all times relevant hereto, S.R.B., through the Plaintiff-Parents, was enrolled as a student at Defendants' School.

12.      At all times relevant hereto, Defendants acted by and through their agents, ostensible agents, servants, workmen, and/or employees, who were at all times relevant hereto acting within the course and scope of their agency, authority, and employment.

<u>**JURISDICTION AND VENUE**</u>

13.      As set forth in length below, Plaintiffs' damages exceed $75,000.00.

14.      For purposes of jurisdiction and venue, Plaintiffs are residents of the State of New Jersey.

15.      For purposes of jurisdiction and venue, Malvern is a resident of the Commonwealth of Pennsylvania, and its headquarters are located within the judicial district of the United States District Court for the Eastern District of Pennsylvania.

16.      For purposes of jurisdiction and venue, both BBCC and BrightPath are residents of the State of Delaware.

17.      28 U.S.C. §1332 confers original jurisdiction over all civil matters where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different states.

---

[3] Find a Child Care & Daycare Center | BrightPath Kids US (https://brigthpathkids.com/us/locations).

18.     Further, venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) as Malvern's corporate headquarters are located in the judicial district of the United States District Court for the Eastern District of Pennsylvania, and both BBCC and BrightPath have sufficient contacts within the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(d), as they advertise that they own and/or operate multiple schools situated in the Eastern District of Pennsylvania.

## **STATEMENT OF FACTS**

### *The Parties' Background and Relationship*

19.     Defendants own and/or operate multiple locations throughout the United States and Canada.

20.     Specifically, Malvern owns and/or operates Twenty-Seven (27) schools throughout Pennsylvania and New Jersey.

21.     Defendants advertise on their websites that:

> [Malvern] was founded in 1998 with a philosophy to deliver a high quality educational program for children between the ages of 6 weeks and 8 years. Much different than a daycare, our educated teachers focus on your child's physical, emotional, and cognitive growth. [Malvern's] curriculum is designed to meet or exceed the standards established by the National Association for the Education of Young Children (NAEYC), the nation's largest early childhood accrediting organization. The Malvern School has locations in Pennsylvania and New Jersey and our schools are open year round with full and half day enrollment options.[4]

22.     Based on the advertisements and representations made by Defendants related to the early childhood education services they provide, Plaintiff-Parents approached Defendants about enrolling S.R.B. at the School.

---

[4] More Than Daycare | The Malvern School Preschool in PA & NJ

23. In November of 2024, Plaintiff-Parents met with Defendants regarding S.R.B.'s potential enrollment at the School, where Plaintiff-Parents' other minor child, S.P.B., was already enrolled as a student.

24. During this meeting, Plaintiff-Parents were provided a document called "The Malvern School Parent Handbook" (hereinafter "**Defendants' Handbook**"). A true and correct copy of Defendants' Handbook is attached hereto as **Exhibit "D"**.

25. Throughout the Defendants' Handbook, Defendants made numerous representations that they are the best in early childhood education. *See* **Exhibit "D,"** *generally*.

26. The representations set forth in Defendants' Handbook include, but are not limited to:

   a. Families' expectations are met through our commitment to providing the finest curriculum and staff in a nurturing environment," it employs "highly trained teachers and staff" and provides "open communication between parents and the school;

   b. At [the School], always putting the children—and their health and safety—first is more than something we say. It's a responsibility that we are committed to delivering on every day;

   c. Families' expectations are met through [Malvern's] commitment to providing the finest curriculum and staff, all in a nurturing environment. At [the School] your child will feel loved;

   d. Defendants' philosophy combines a developmentally appropriate program with state of the art equipment, an educated staff, and a safe and nurturing environment;

   e. Defendants provide ongoing training to staff to keep staff aware of current childhood development practices;

   f. Defendants concentrate on the health, safety, education program, appearance, staff development and administrative management of the school;

   g. Defendants provide training and support to its staff to ensure that all staff are comfortable, confident and competent to meet the developmental and educational needs of all children;

    h.   At all times, staff must focus on ensuring the safety and wellbeing of the children in their care, supporting the children through their daily experiences using positive guidance and strategy; and

    i.   Defendants' School is a smoke and vapor free environment.  Parents, staff and visitors are asked to comply with this request.

*See* **Exhibit "D,"** at pages 1-2, 8, and 16.

27.    On November 20, 2024, after speaking with Defendants and reviewing/acknowledging receipt of Defendants' Handbook, Plaintiff-Parents enrolled S.R.B. as a student at the School and Plaintiff-Parents paid Defendants each month for services rendered to both S.R.B. and S.P.B.

*The THC Vape Incident*

28.    On or about July 30, 2025, at approximately 10:43 a.m., Plaintiff-Parents received a call from one of Defendants' employees, who was in tears.

29.    Defendants informed Plaintiff-Parents that one of the teachers in S.R.B.'s classroom (hereinafter the "**Infant Room**"), had dropped a tetrahydrocannabinol[5] vape pen (hereinafter the "**THC Vape**") in the Infant Room.

30.    Defendants further informed Plaintiff-Parents that S.R.B. had picked up the THC Vape and placed it in her mouth a "few times" over a five (5) minute span of time before any of Defendants' employees realized what was happening.

31.    Defendants advised Plaintiff-Parents that this incident was recorded on video cameras in the Infant Room.

32.    Defendants further advised that while S.R.B. appeared to be acting normally since the incident, that S.R.B. may need to seek medical attention due to her exposure to the THC Vape.

---

[5] Tetrahydrocannabinol, commonly referred to as THC, is a cannaboid found in cannabis (marijuana).  THC is the principal psychoactive constituent of Cannabis.

33.    At 10:46 a.m., immediately following the call from Defendants, Plaintiff-Parents contacted S.R.B.'s pediatrician to report the incident and seek medical advice.

34.    Unfortunately, Plaintiff-Parents were placed on hold and were later informed that they would receive a call back from a healthcare professional.

35.    At approximately 11:49 a.m., Plaintiff-Parents arrived at the School, where they were advised by Defendants that the employee who dropped the THC Vape had been fired and that Defendants had reported the incident to the appropriate state agencies.

36.    During this conversation, Plaintiff-Parents saw Defendants' employee holding an incident report, which was blank and had not been filled out.

37.    While at the School, at approximately 11:57 a.m., Plaintiff-Parents received a call from S.R.B.'s pediatrician, who told Plaintiff-Parents to contact poison control.

38.    At 12:05 p.m., Plaintiff-Parents left the School with both of their children.

39.    After arriving home, Plaintiff-Parents contacted Defendants to advise that poison control had been contacted.

40.    Plaintiff-Parents also requested to see the footage from the incident to assist in obtaining the appropriate level of medical care for S.R.B., however, Plaintiff-Parents received no response to this request.

41.    At 1:23 p.m., after speaking with both poison control and S.R.B.'s pediatrician, Plaintiff-Parents scheduled S.R.B. for blood tests to screen for drugs, Hepatitis B, and HIV.

42.    After these blood tests were scheduled, Plaintiff-Parents sent an email to Defendants, renewing their request to view the footage so they could obtain the appropriate level of medical care.

43.     However, Defendants once again failed to respond to this request, and S.R.B. underwent blood testing at approximately 4:00 p.m.

44.     At approximately 4:15 p.m., Plaintiff-Parents called and reported the incident to the New Jersey Department of Children and Family Services (hereinafter "**DCF**").

45.     During this call, Plaintiff-Parents were advised that they would be contacted by DCF's Western Regional Office Institutional Abuse Investigative Unit (hereinafter "**IAIU**").

46.     After ending their call with DCF, Plaintiff-Parents contacted the Voorhees Police Department to report the incident.

47.     At approximately 5:05 p.m., the Voorhees Police Department appeared at Plaintiffs' residence and took a report.

48.     At approximately 5:15 p.m., Plaintiff-Parents received a call from Defendants' Regional Director, who informed Plaintiff-Parents that she would have reached out earlier, but wanted to "give some space" to the Plaintiffs following the incident.

49.     Plaintiff-Parents asked Defendants' Regional Director for the name of the teacher who dropped the THC Vape.

50.     The Regional Director refused to provide the name of the teacher but advised that the teacher who dropped the THC Vape had not been at the School long and was terminated following the incident.

51.     Even though this teacher brought a THC Vape into the Infant Room, and had not been employed by Defendants for long, Defendants' Regional Director assured Plaintiff-Parents that Defendant has a strict vetting process for hiring staff.

52.     Defendants' Regional Director also told Plaintiff-Parents that they would not be allowed to view the footage of the incident until Defendants could redact the video and further

advised that Plaintiff-Parents would need to come to the School to view the footage as Defendants would not provide them with a copy of the footage.

53.     Defendants' Regional Director described the footage to Plaintiff-Parents.

54.     According to the Regional Director, the teachers and children were all sitting together when one of the teachers stood up and left the room. The THC Vape belonged to the teacher who stood up and when she did, the THC Vape fell to the floor. No one noticed the THC Vape, and at this point, S.R.B. crawled away from the group and picked up the THC Vape.

55.     The Regional Director indicated that at times during the video, S.R.B. had the THC Vape in her mouth, but it was impossible to tell which end of the THC Vape was in her mouth.

56.     The Regional Director claimed that the video showed S.R.B. playing with the THC Vape for approximately three (3) minutes, at which point a teacher walked over and took the THC Vape away.

57.     After she finished describing the video, Defendants' Regional Director advised Plaintiff-Parents that the incident was intolerable, and that Defendants had reported the incident to their own HR and safety team, as well as to the appropriate licensing agency.

58.     Just before the call ended, Defendants' Regional Director told Plaintiff-Parents that they would need to sign the incident report prepared by Defendants, and that the Regional Director would be in touch with Plaintiff-Parents.

*Post-THC Vape Incident*

59.     On July 31, 2025, at approximately 11:00 a.m., Plaintiff-Parents were informed by a relative who was babysitting S.R.B., that an investigator from IAIU was at Plaintiff-Parents' residence and requested to examine S.R.B. as part of DCF's investigation.

60.     As this visit was not scheduled, Plaintiff-Parents were required to leave work to cooperate with IAIU's investigation and so they requested that the investigator come back to the residence when Plaintiff-Parents could come home, which the IAIU investigator agreed to.

61.     Plaintiff-Parents were able to return home at 12:30 p.m., at which time they met with the IAIU investigator, and the meeting with IAIU took approximately one (1) hour.

62.     The IAIU investigator informed Plaintiff-Parents that she had already been to the School and watched the footage.

63.     When Plaintiff-Parents asked the IAIU investigator to describe the footage, the investigator answered that "[I]t looked bad."

64.     The IAIU investigator's description of the video was completely different than Defendants' description of the video.

65.     In fact, the IAIU investigator indicated that the mouthpiece end of the THC Vape was in S.R.B.'s mouth for three (3) minutes before a teacher realized what was going on.

66.     After completing the interview, the IAIU investigator advised Plaintiff-Parents that their report to DCF, and not any report from Defendants, prompted the unscheduled visit.

67.     Later in the afternoon on July 31, 2025, Plaintiff-Parents received a voicemail from Defendants' Regional Director, advising that Defendants had redacted the video and Plaintiff-Parents could come in the following day to view the footage.

68.     On August 1, 2025, after Plaintiffs and their attorney attempted to make arrangements to view the video, Defendants' counsel advised that only Plaintiffs, and not their attorney, would be permitted to view the video.

69.     The parties' attorneys discussed parameters for viewing the video, and the same day, Plaintiff-Parents provided dates and times that they could come to the School to watch the video.

70.     Despite providing dates to watch the video on Friday, August 1, 2025, Defendants did not respond to Plaintiffs until five days later, on Tuesday August 5, 2025, again delaying Plaintiff-Parents from viewing the footage to make appropriate decisions related to S.R.B.'s medical treatment.

### *Plaintiff-Parents View the Footage*

71.     On August 7, 2025, Plaintiff-Parents appeared at the School to view the footage.

72.     Three (3) of the Defendants' employees were present when the Plaintiff-Parents were finally provided with the chance to view the video, more than one (1) week after the incident.

73.     The footage, which was three minutes and nine seconds in length, began with the THC Vape on the floor approximately one (1) foot away from S.R.B.

74.     Based on Plaintiff-Parents' conversation with the IAIU investigator, the footage was clearly edited and/or cut down, as the footage failed to show how the THC Vape got into the room, who the THC Vape belonged to, how the THC Vape ended up on the floor, or how long the THC Vape was on the floor before S.R.B. picked it up.

75.     The footage began with S.R.B. reaching for the THC Vape several times.

76.     Approximately thirty (30) seconds into the video, S.R.B. moved from a sitting position, and started crawling toward the THC Vape.

77.     When S.R.B. got to the THC Vape, she looked at it for a few seconds, and at the one minute mark, S.R.B. placed the mouthpiece end of the THC Vape into her mouth.

78. Despite the representation of Defendants' Regional Director, it is abundantly clear from the video that the end of the THC Vape placed in S.R.B.'s mouth was the end that releases THC.

79. Defendants' Regional Director also misrepresented to Plaintiff-Parents that S.R.B. only had the THC Vape in her mouth a few times, as the video clearly shows that other than S.R.B. quickly taking the THC Vape out of her mouth on three (3) occasions, the THC Vape was in her mouth for at least two (2) full minutes.

80. The footage also clearly shows that there were three (3) teachers within 10-12 feet of S.R.B. throughout the video, all of which had a clear and unobstructed view of S.R.B.

81. Rather than paying attention to S.R.B. and the other infants in their care, Defendants' employees were gossiping about clothes and someone's husband.

82. The footage showed that there were other infants approximately 2-3 feet from S.R.B. while the THC Vape was in S.R.B.'s mouth.

83. In fact, S.R.B. crawled over to a crib where an infant was sleeping while S.R.B. had the THC Vape in her mouth.

84. Just after the three (3) minute mark in the video, one of Defendants' employees finally realized what was going on and removed the THC Vape from S.R.B.'s mouth, at which time the edited video cut off.

85. Clearly, Plaintiff-Parents were shocked, angered, and distraught while viewing the video.

86. The disturbing and troubling nature of the video was only further evidenced by Defendants' own employees crying while Plaintiff-Parents watched the video.

87.     After watching the video, Plaintiff-Parents again requested the name of the teacher who dropped the THC Vape and once again, Defendants refused to provide this information.

88.     Rather than provide this information to distraught parents, Defendants' Regional Director told Plaintiff-Parents that the teacher was fired and without providing specifics, indicated that everyone involved was disciplined.

89.     Prior to leaving the School on August 7, 2025, Defendant provided Plaintiff-Parents with a copy of the incident report prepared by Defendants (hereinafter the "**Incident Report**"). A true and correct copy of the Incident Report is attached hereto and incorporated herein as **Exhibit "E"**.

90.     The Incident Report was just as shocking to Plaintiff-Parents as the video was.

91.     The Incident Report, which was not provided to Plaintiff-Parents on the day of the incident in violation of Defendants' own policies, indicated that the incident occurred at 9:25 a.m., and that Plaintiff-Parents were notified at 9:40 a.m.  *See* **Exhibit "E"**.

92.     This is blatantly false as Plaintiff-Parents were not contacted by Defendants until 10:43 a.m., more than one (1) hour after the incident occurred.

93.     From the time the incident occurred to the time Plaintiff-Parents were contacted, the only information listed on Defendants' own daily report related to S.R.B. was that S.R.B. had her diaper changed at 9:58 a.m., and that she was given a bottle at 10:21, both after the incident occurred but before Plaintiff-Parents were notified. A true and correct copy of Defendants' Daily Report for S.R.B. is attached hereto and incorporated herein as **Exhibit "F"**.

94.     The Incident Report describes the incident as "[A] teacher dropped a vape pen in the infant classroom within reach of the children.  [S.R.B.] subsequently picked the pen up." *See* **Exhibit "E"**.

95.     There is no reference that the Vape contained THC, nor is there any indication that S.R.B. had the Vape in her mouth for approximately two (2) minutes before any of Defendants' employees realized what was going on.  *See* **Exhibit "E"**.

96.     Further, the Incident Report states that "no injury occurred,"  which is false. *See* **Exhibit "E"**.

97.     As Defendants failed to notify poison control, 911, nor received any indication from Plaintiff-Parents regarding S.R.B.'s well-being, Defendants had absolutely no basis for their determination that S.R.B. sustained no injury.

98.     To the contrary, S.R.B. sought medical attention and underwent bloodwork following the incident.

99.     Lastly, while the Incident Report indicates that Defendants reported the incident to IAIU and the State Licensing Department, IAIU's investigator indicated to Plaintiff-Parents that their report, not any report from Defendants, prompted DCF and IAIU to investigate the incident. *See* **Exhibit "E"**.

100.     As for reporting the incident to the State Licensing Agency, Plaintiff-Parents were never contacted by the State Licensing Agency, casting doubt as to whether Defendants actually reported the incident as stated in the Incident Report.  *See* **Exhibit "E"**.

101.     This incident resulted solely from the gross negligence, recklessness, carelessness, and borderline criminal conduct of Defendants, their agents, ostensible agents, servants, workmen, and/or employees, and was due in no manner whatsoever to any act or failure to act on the part of the Plaintiffs.

102.    As a result of the aforesaid incident, resulting from the gross negligence, recklessness, carelessness, and borderline criminal conduct of Defendants, their agents, ostensible agents, servants, workmen, and/or employees, Plaintiffs have sustained physical injuries, as well as severe emotional distress, which is serious and permanent in nature, and which Plaintiffs will continue to suffer from for an indefinite period of time in the future.

103.    As a result of the aforesaid incident, resulting from the gross negligence, recklessness, carelessness, and borderline criminal conduct of Defendants, their agents, ostensible agents, servants, workmen, and/or employees, S.R.B. was subject to AIDS, Hepatitis B, and drug testing, and there is no way of knowing the long-term effects S.R.B. may suffer from in the future.

104.    As a result of the aforesaid incident, resulting from the gross negligence, recklessness, carelessness, and borderline criminal conduct of Defendants, their agents, ostensible agents, servants, workmen, and/or employees, Plaintiff-Parents were forced to remove S.R.B. and their other child S.P.B. from Defendants' School, forcing them to miss work resulting in a loss of income, and incur additional costs in the form of deposits to arrange new childcare arrangements for S.R.B. and their other child S.P.B.

105.    As a result of the aforesaid incident, resulting from the gross negligence, recklessness, carelessness, and borderline criminal conduct of Defendants, their agents, ostensible agents, servants, workmen, and/or employees, Plaintiff-Parents have been forced to cooperate with the State's investigation into the incident, causing significant emotional distress, financial loss, and severe disruption to their day-to-day lives.

106.    The gross negligence, recklessness, carelessness, and borderline criminal conduct of Defendants, their agents, ostensible agents, servants, workmen, and/or employees, was the sole and proximate cause of the injuries and damages suffered by Plaintiffs as set forth above.

**COUNT I—NEGLIGENCE**
**S.R.B., by and through Plaintiff-Parents v. Defendants**

107.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

108.    Under New Jersey law, schools and their employees have a duty to "protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." *Jerkins ex rel Jerkins v. Anderson*, 191 N.J. 285, 296 (N.J. 2007); *citing L.W. v. Toms River Reg'l Schs. Bd. of Educ.*, 189 N.J. 381, 406 (N.J. 2007).

109.    "[S]chool officials have a general duty to exercise reasonable supervisory care for the safety of students entrusted to them, and are accountable for injuries resulting from their failure to discharge that duty." *Jerkins*, 191 N.J. at 296 (N.J. 2007); *citing Caltavurturo v. City of Passaic*, 124 N.J. Super. 361 (App. Div. 1973).

110.    This is because "'parents…relinquish their supervisory role over their children to teachers and administrators during school hours,' and thus 'transfer to school officials the power to act as guardians of those young wards,' school officials have a duty to students until those officials have successfully monitored the students through dismissal." *Jerkins*, 191 N.J. at 296; *citing Frugis v. Bracigliano*, 177 N.J. 250, 268 (N.J. 2003).

111.    In the case at issue, Defendants had a duty to exercise reasonable care in the supervision and protection of S.R.B.

112.    Defendants breached their duties to S.R.B., and Defendants' breaches of their duties include, but are not limited to:

a.   Failing to comply with their own internal policies and procedures;

b.   Permitting an employee to work with infants while in the possession of the THC Vape;

16

    c.   Allowing S.R.B. to access and place the THC Vape in her mouth for more than two (2) minutes while employees were within 10-12 feet of S.R.B.;

    d.   Failing to prevent S.R.B. from being exposed to the THC Vape;

    e.   Supervising the Infant Room without due regard for the rights and safety of S.R.B.;

    f.   Allowing their agents, employees, contractors, and/or servants to perform their duties in an unsafe, negligent, and/or reckless manner;

    g.   Failing to have safe operating and reporting procedures in place;

    h.   Failing to provide proper first aid and/or medical care to S.R.B.;

    i.   Failing to contact Plaintiff-Parents in a reasonable amount of time to notify them of the incident; and

    j.   Failing to notify the appropriate state agencies and/or health agencies of the incident.

113.   Further, Defendants' conduct in breaching their duties owed to S.R.B. constitute gross negligence, reckless, willful, and wanton conduct, warranting an award of punitive damages.

114.   As a direct and proximate result of the grossly negligent, reckless, careless, willful, and wanton conduct of Defendants, their agents, ostensible agents, servants, contractors, workmen, and/or employees, S.R.B. has been forced to undergo medical treatment and care, which will continue indefinitely into the future.

115.   As a direct and proximate result of the grossly negligent, reckless, careless, willful, and wanton conduct of Defendants, their agents, ostensible agents, servants, contractors, workmen, and/or employees, S.R.B. has and may continue to suffer cognitive and medical impairments from exposure to the THC Vape, which will continue indefinitely into the future.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The

Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy

Bees Montessori and Child Care Center LLC, and  BrightPath Kids d/b/a BrightPath Early

Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble

and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable

Court deems just and appropriate.

**COUNT II—NEGLIGENCE**
**Plaintiff-Parents v. Defendants**

116.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though

fully set forth herein at length.

117.    As set forth in Defendants' Handbook, Defendants owed Plaintiff-Parents a duty to

provide adequate childcare for the benefit of S.R.B.

118.    Defendants breached their duties owed to Plaintiff-Parents, and said breaches

include, but are not limited to:

    a.    Failing to comply with Defendants' duties and obligations to Plaintiff-Parents as set forth in Defendants' Handbook;

    b.    Permitting an employee to work with infants while in the possession of the THC Vape;

    c.    Allowing S.R.B. to access and place the THC Vape in her mouth for more than two (2) minutes while employees were within 10-12 feet of S.R.B.;

    d.    Failing to prevent S.R.B. from being exposed to the THC Vape;

    e.    Supervising the Infant Room without due regard for the rights and safety of S.R.B.;

    f.    Allowing their agents, employees, contractors, and/or servants to perform their duties in an unsafe, negligent, and/or reckless manner;

    g.    Failing to have safe operating and reporting procedures in place;

    h.    Failing to provide proper first aid and/or medical care to S.R.B.;

18

i.  Failing to notify Plaintiff-Parents for over one hour of the incident, impeding Plaintiff-Parents' ability to timely and adequately seek the appropriate level medical care for S.R.B.;

j.  Failing to permit the Plaintiff-Parents to watch the video of the incident for over one (1) week, impeding Plaintiff-Parents' ability to timely and adequately seek the appropriate level of medical care for S.R.B.;

k.  Failing to timely notify the appropriate state agencies, resulting in Plaintiff-Parents having to report the incident to Voorhees Police Department and IAIU; and

l.  Forcing Plaintiff-Parents to participate in meetings with Voorhees Police Department and IAIU.

119.    As a direct and proximate result of the grossly negligent, reckless, careless, willful, and wanton conduct of Defendants, their agents, ostensible agents, servants, contractors, workmen, and/or employees, and the injuries sustained by S.R.B., Plaintiff-Parents have incurred, and will continue to incur in the future, various expenses related for the medical treatment needed for S.R.B.

120.    As a direct and proximate result of the grossly negligent, reckless, careless, willful, and wanton conduct of Defendants, their agents, ostensible agents, servants, contractors, workmen, and/or employees, and the injuries sustained by S.R.B., Plaintiff-Parents have sustained damages in the form of medical expenses for their own emotional distress and mental well-being following the incident.

121.    As a direct and proximate result of the grossly negligent, reckless, careless, willful, and wanton conduct of Defendants, their agents, ostensible agents, servants, contractors, workmen, and/or employees, and the injuries sustained by S.R.B., Plaintiff-Parents have also suffered, and will continue to suffer in the future, economic losses in the form of lost wages to take S.R.B. to seek treatment, lost wages from taking days off to participate in the IAIU investigation, as well as economic losses related to securing alternative childcare arrangements for both S.R.B. and their other minor child who was enrolled at Defendants' School.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

<u>**COUNT III—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
**Plaintiff-Parents v. Defendants**

122.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

123.    New Jersey courts recognize claims for outrage, or the intentional infliction of emotional distress. *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002).

124.    In order to sustain a claim alleging outrage and/or intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant acted intentionally and/or recklessly; (2) the defendant's conduct must be extreme or outrageous, meaning that it must "go beyond all possible bounds of decency"; (3) the defendant's actions must have been the proximate cause of the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Lacsurain*, 349 N.J. Super. at 277; *citing Buckley v. Trenton Saving Fund Soc'y*, 11 N.J. 355, 366-367 (1988).

125.    Importantly, to sustain a claim for outrage or the intentional infliction of emotional distress, "[P]hysical injury need not be proven; it is sufficient if the plaintiff suffers severe emotional distress." *Id*.

126.    Defendants' actions in allowing the incident to occur, as well as their investigation, handling, and/or reporting of the incident were intentional and/or reckless, and include but are not limited to:

    a.  Failure to comply with Defendants' own policies and procedures related to health and safety of S.R.B.;

    b.  Allowing the THC Vape into the Infant Room;

    c.  Allowing S.R.B., an infant, to place the THC Vape in her mouth for two (2) minutes;

    d.  Failing to notify Plaintiff-Parents for over one hour of the incident, impeding Plaintiff-Parents' ability to timely and adequately seek the appropriate level medical care for S.R.B.;

    e.  Failing to permit the Plaintiff-Parents to watch the video of the incident for over one (1) week, impeding Plaintiff-Parents' ability to timely and adequately seek the appropriate level of medical care for S.R.B.;

    f.  Failing to timely notify the appropriate state agencies, resulting in Plaintiff-Parents having to report the incident to Voorhees Police Department and IAIU; and

    g.  Forcing Plaintiff-Parents to participate in meetings with Voorhees Police Department and IAIU.

127.    Defendants' above-referenced actions and inactions constitute extreme, and outrageous conduct.

128.    As a direct and proximate cause of Defendants' intentional, reckless, extreme and outrageous conduct, the Plaintiff-Parents suffered severe, emotional distress.

129.    The severe, emotional distress sustained by Plaintiff-Parents was so severe that no reasonable person could be expected to endure it.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The

Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

### COUNT IV—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### Plaintiff-Parents v. Defendants

130.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

131.    Plaintiff-Parents bring this Count IV—Negligent Infliction of Emotional Distress in the alternative to Count III—Intentional Infliction of Emotional Distress.

132.    In bringing a direct claim of negligent infliction of emotional distress, a plaintiff must establish that: (1) defendant owed a duty toward the plaintiff; (2) defendant breached that duty; and (3) defendant's breach of duty caused the plaintiff to suffer genuine and substantial emotional distress. *Lacsurain*, 349 N.J. Super. at 277; *citing Decker v. Princeton Packet, Inc*., 116 N.J. 418, 429-430 (1989).

133.    "Whether the defendant has a duty of care to plaintiff depend on whether it was foreseeable that the plaintiff would be seriously, mentally distressed." *Id.; citing Decker*, 116 N.J. at 429.

134.    As previously stated, Defendants owed Plaintiff-Parents a duty to provide Plaintiff-Parents with the level of care promised in caring for S.R.B.'s health, safety, and well-being while in Defendants' care.

135.    Defendants breached this duty owed to Plaintiff-Parents by failing to provide Plaintiff-Parents with the level of care promised in caring for S.R.B.'s health, safety, and well-being while in Defendants' care.

136.    As a direct and proximate result of Defendants' breach of duty owed to Plaintiff-Parents, Plaintiff-Parents have suffered genuine and substantial emotional distress.

137.    At all times material hereto, it was foreseeable that Plaintiff-Parents would be seriously, mentally distressed if Defendants breached their duty owed to Plaintiff-Parents in caring for S.R.B.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

### COUNT V—NEGLIGENCE *PER SE*
### VIOLATION OF MANUAL OF REQUIREMENTS FOR CHILD CARE FACILITIES
### Plaintiffs v. Defendants

138.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

139.    Under New Jersey law, violations of a statute and/or administrative regulation designed to protect a specific class of persons, including children in a daycare, may constitute negligence *per se*.

140.    The Manual of Requirements for Child Care Centers, N.J.A.C. 3A:52, *et seq.* (hereinafter the "**CCC**"), promulgated by the New Jersey Department of Children and Families, establishes the standard of care related to daycares operating in New Jersey.

141.    At all times relevant hereto, Defendants' School falls under the CCC's definition of a "childcare center." *See N.J.A.C.* 3A:52-1.2(a)-(b).

142.    At all times relevant hereto, S.R.B. falls under the CCC's definition of a "child". *See N.J.A.C.* 3A:52-1.4.

143.    At all times relevant hereto, Plaintiff-Parents fall under the CCC's definition of a "parent". *See N.J.A.C.* 3A:52-1.4.

144.    At all times relevant hereto, Defendants were bound to comply with the CCC.

145.    Defendants' aforementioned conduct violates the CCC, specifically but not limited to:

    a.  N.J.A.C. 3A:52-3.2—Failing to comply with reporting requirements;

    b.  N.J.A.C. 3A:52-4.1—Failing to comply with general requirements for sponsors, sponsor representatives, directors, and all staff members;

    c.  N.J.A.C. 3A:52:4-2—Failing to comply with staffing requirements;

    d.  N.J.A.C. 3A:52-4.5—Failing to maintain proper staff/child ratios and supervision;

    e.  N.J.A.C. 3A:52-4.6—Failing to hire staff with the necessary qualifications;

    f.  N.J.A.C. 3A:52-4.7—Failing to comply with staff orientation and development requirements;

    g.  N.J.A.C. 3A:52-4.8—Failing to comply with orientation training requirements;

    h.  3A:52-4.9—Failing to comply with the special requirements to prevent child abuse and neglect;

    i.  N.J.A.C. 3A:52-5.3—Failing to maintain a safe physical environment;

    j.  N.J.A.C. 3A:52-7.6—Failing to properly respond to and document injury to a child;

k. N.J.A.C. 3A:52-7.7—Failing to prohibit smoking in all rooms and outside plaint areas while said areas are occupied by children.

146. The Defendants' violations of the specific sections of the CCC constitute negligence *per se*.

147. The Child Care Licensing Act, N.J.S.A. 30:5B-1, et seq.

148. As a direct and proximate result of the Defendants' violations of the CCC, S.R.B. and Plaintiff-Parents sustained the aforementioned injuries and damages above.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

## COUNT VI—NEGLIGENCE *PER SE*
### VIOLATION OF THE NJ CHILDCARE CENTER LICENSING ACT
#### Plaintiffs v. Defendants

149. Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

150. The New Jersey Child Care Licensing Act, N.J.S.A. 30:5B-1, et seq. (hereinafter the "**NJCCCLA**"), was enacted by the New Jersey legislature to regulate child care programs and facilities to ensure the "health, safety, education, physical, social and intellectual growth and general well-being of" all children in New Jersey. *See* N.J.S.A. 30:5B-2.

151.    At all times relevant hereto, Defendants' School falls under the NJCCCLA's definition of a "childcare center".  *See* N.J.S.A. 30:5B-3(b).

152.    At all times relevant hereto, Defendants, their agents, ostensible agents, servants, workmen, and/or employees, fall under the NJCCCLA's definitions of "parent," "person," and/or "sponsor." *See* N.J.S.A. 30:5B-3(e)-(g).

153.    At all times relevant hereto, S.R.B. falls under the NJCCCLA's definition of a "child".  *See* N.J.S.A. 30:5B-3(a).

154.    At all times relevant hereto, Plaintiff-Parents fall under the NJCCCLA's definition of "parent".  *See* N.J.S.A. 30:5B-3(e).

155.    At all times relevant hereto, Defendants were bound to comply with the NJCCCLA.

156.    Defendants' aforementioned conduct violates the NJCCCLA, including but not limited to:

    a.    Failing to comply with N.J.S.A. 30:5B-6.4 relating to new employees and child abuse background checks;

    b.    Failing to comply with N.J.S.A. 30:5B-6.11 through 30:5B-6.13 relating to criminal history background checks on all staff members of the child care center and reporting requirements;

    c.    Failing to comply with N.J.S.A. 30:5B-6.14 relating to grounds for permanent disqualification from employment, ownership, and sponsorship of child care centers;

    d.    Failing to comply with N.J.S.A. 30:5B-6.15 relating to termination of employees from child care facilities;

    e.    Failing to comply with N.J.S.A. 30:5B-6.16 relating to the reporting of known criminal charges pending against employees of child care centers; and

    f.    Engaging in criminal activity as set forth in N.J.S.A. 30:5B-13.

157.    Defendants' violations of the specific sections of the NJCCLA constitute negligence *per se*.

158.    As a direct and proximate result of the Defendants' violations of the NJCCLA, S.R.B. and Plaintiff-Parents sustained the aforementioned injuries and damages above.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

**COUNT VII—NEGLIGENCE *PER SE***
**VIOLATION OF CRIMINAL AND CANNABIS STATUTES AND CODES**
**Plaintiffs v. Defendants**

159.    Plaintiffs incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

160.    In addition to violating the CCC and the NJCCLA, Defendants' aforementioned conduct also violates numerous New Jersey criminal statutes.

161.    Defendants' aforementioned conduct includes, but is not limited to, violations of the following:

    a.  Engaging in neglect of S.R.B. as defined by N.J.S.A. 9:6-1;

    b.  Failing to properly report the incident as required by N.J.S.A. 9:6-8.10;

    c.  Engaging in child abuse as defined by N.J.S.A. 9:6-8.21(c)-(d);

    d.  Failing to report S.R.B.'s use of a cannabis item as required by N.J.S.A. 18A:40A-12(a);

e.  Violating N.J.S.A. 2C:33-16 by allowing employees to bring and/or possess cannabis items on school grounds;

f.  Violating the Jake Honig Compassionate Use Medical Cannabis Act, N.J.S.A. 24:6I-1; *et seq*.; and

g.  Violating the New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:6I-31, *et seq*.

162.  As a direct and proximate result of the Defendants' violations of the aforementioned cannabis and criminal statutes, S.R.B. and Plaintiff-Parents sustained the aforementioned injuries and damages above.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

## COUNT VIII—NEGLIGENT HIRING
### Plaintiffs v. Defendants

163.  Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

164.  New Jersey recognizes the tort of negligent hiring.

165.  To hold an employer liable for negligent hiring, a plaintiff must prove: (1) the employer knew or had reason to know of the employees' dangerous characteristics and could have reasonably foreseen that such qualities created a risk of harm to other persons; and (2) through the

employer's negligence of hiring employees, the employees' incompetence, unfitness or dangerous characteristics proximately caused the injury. *See Piscitelli v. Classic Residence by Hyatt*, 408 N.J. Super. 83 (App. Div. 2009).

166.    At all times relevant hereto, Defendants knew, or should have known, of the dangerous characteristics of their employees in the Infant Room, specifically that employees used THC Vapes and brought the same to the School.

167.    At all times relevant hereto, Defendants should have reasonably foreseen that the dangerous characteristics of their employees in the Infant Room created a risk of harm to the children in their care.

168.    As a direct result of Defendants' negligence and recklessness in hiring their employees in the Infant Room, the Infant Room employees' incompetence, unfitness, and/or dangerous characteristics caused the aforementioned damages and injuries to both S.R.B. and Plaintiff-Parents.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

## COUNT IX—NEGLIGENT SUPERVISION AND/OR TRAINING
### Plaintiffs v. Defendants

169.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

170.    New Jersey recognizes the tort of negligent supervision and/or training.

171.    To hold an employer liable for negligent supervision and/or training, a plaintiff must prove: (1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm; and (2) that risk of harm materializes and causes plaintiff's damages.  *See G.A.-H v. K.G.G.*, 238 N.J. 401 (2019).

172.    At all times relevant hereto, Defendants knew or had reason to know that the failure to supervise and/or train their employees in the Infant Room regarding the possession and/or use of THC Vapes would create a risk of harm.

173.    As a direct and proximate cause of Defendants' negligent and/or reckless failure to provide supervision and/or training to their employees in the Infant Room regarding the possession and/use of THC Vapes at the School, Plaintiffs suffered the aforementioned damages and injuries.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

## COUNT X—BREACH OF CONTRACT
### Plaintiff-Parents v. Defendants

174.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though fully set forth herein at length.

175.    To prevail on a breach of contract claim, a plaintiff must prove that: (1) the parties entered into a contract containing certain terms; (2) plaintiff did what the contract required plaintiff to do; (3) defendants breached the terms of the contract; and (4) defendant's breach caused the plaintiff to suffer damages.  *See Goldfarb v. Solimine*, 245 N.J. 326 (2021).

176.    The Defendants' Handbook constitutes a binding contract between Plaintiff-Parents and Defendants, including material terms.

177.    Pursuant to the Defendants' Handbook, Defendants would provide the services set forth therein, and in exchange, Plaintiff-Parents would compensate Defendants for the services provided.

178.    At all times relevant hereto, Plaintiff-Parents paid Defendants in accordance with the terms contained in Defendants' Handbook.

179.    At all times relevant hereto, Defendants failed to comply with their obligations set forth in Defendants' Handbook, constituting a breach of contract.

180.    Defendants' breaches of contract include, but are not limited to:

a.    Failing to provide the finest curriculum and staff in a nurturing environment;

b.    Failing to provide highly trained teachers and staff;

c.    Failing to provide open communication with Plaintiff-Parents;

d.    Failing to put the health and safety of S.R.B. first;

e.    Failing to provide ongoing training to staff;

    f.   Failure to concentrate on the health, safety, education programs, appearance, staff development, and administrative management of the school;

    g.   Failing to provide training and support to staff to ensure that all staff are comfortable, confident, and competent to meet the developmental needs of S.R.B.;

    h.   Failing in ensuring the safety and well-being of S.R.B.; and

    i.   Failing to provide a smoke and vapor free environment.

*See* **Exhibit "A,"** at pages 1-2, 8, and 16.

181.    As a direct result of Defendants' breach of their obligations as set forth in Defendants' Handbook, Plaintiff-Parents have suffered damages and will continue to suffer damages, which include but are not limited to: (1) securing alternative childcare for S.R.B. and their other minor child previously enrolled at the School; (2) costs associated with the necessary medical care to both S.R.B. and Plaintiff-Parents; (3) lost wages incurred as a result of missing work to transport S.R.B. to and from medical appointments; (4) lost wages incurred as a result of missing work to participate in the Voorhees Police Department and IAIU investigations related to the incident; (5) lost wages and monies expended by Plaintiff-Parents in seeking treatment for the emotional distress resulting from the incident; and (6) attorneys' fees and legal costs incurred by bringing this action against Defendant.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble

and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable

Court deems just and appropriate.

### COUNT IX--VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
#### Plaintiff-Parents v. Defendants

182.    Plaintiffs hereby incorporate the preceding paragraphs of their Complaint as though

fully set forth herein at length.

183.    Under New Jersey law, consumers are protected under the New Jersey Consumer

Fraud Act, N.J.S.A. 56:8-1, *et seq*. (hereinafter the "**NJCFA**").

184.    To establish a private cause of action under the NJCFA, a plaintiff first must

demonstrate: (1) unlawful conduct by the defendant; (2) an ascertainable loss; and (3) a causal

relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *See*

*Cox v. Sears Roebuck & Co*., 138 N.J. 2 (1994).

185.    Under the NJCFA, any person who suffers any ascertainable loss causally

connected to a defendant's unlawful conduct, shall be awarded treble damages and reasonable

attorneys' fees, filing fees and reasonable cost of suit. *See N.J.S.A*. 56:8-19.

186.    Plaintiff-Parents are "persons" as defined by N.J.S.A. 56:8-1(d).

187.    Defendants are "persons" as defined by N.J.S.A. 56:8-1(d).

188.    The childcare services offered by Defendants to Plaintiff-Parents for the benefit of

S.R.B. fall under the definition of "merchandise" as defined by N.J.S.A. 56:8-1(e).

189.    Defendants engaged in unconscionable commercial practices, deception, fraud,

false pretenses, false promises, and/or misrepresentations, as defined by N.J.S.A. 56:8-2.

190.    Defendants' unconscionable commercial practices, deception, fraud, false

pretenses, false promises, and/or misrepresentations, include, but are not limited to:

a.  Families' expectations are met through our commitment to providing the finest curriculum and staff in a nurturing environment," it employs "highly trained teachers and staff" and provides "open communication between parents and the school;

b.  At [the School], always putting the children—and their health and safety—first is more than something we say. It's a responsibility that we are committed to delivering on every day;

c.  Families' expectations are met through [the School's] commitment to providing the finest curriculum and staff, all in a nurturing environment. At [the School] your child will feel loved;

d.  Defendants' philosophy combines a developmentally appropriate program with state of the art equipment, an educated staff, and a safe and nurturing environment;

e.  Defendants provide ongoing training to staff to keep staff aware of current childhood development practices;

f.  Defendants concentrate on the health, safety, education program, appearance, staff development and administrative management of the school;

g.  Defendants provide training and support to staff to ensure that all staff are comfortable, confident and competent to meet the developmental and educational needs of all children;

h.  At all times, staff must focus on ensuring the safety and wellbeing of the children in their care, supporting the children through their daily experiences using positive guidance and strategy;

i.  Defendants' School is a smoke and vapor free environment.  Parents, staff and visitors are asked to comply with this request;

j.  Providing Plaintiff-Parents with an inaccurate representation of the contents of the video footage resulting in emotional distress and a delay in obtaining an appropriate level of medical care; and

k.  Providing Plaintiff-Parents with an incident report containing numerous misrepresentations and inaccuracies.

191.  As a result of Defendants' unconscionable commercial practices, deception, fraud, false pretenses, false promises, and/or misrepresentations, Plaintiff-Parents have incurred damages in the form of medical expenses for the benefit of S.R.B., lost income from having to take time to

secure alternative childcare arrangements, costs in the form of increased childcare costs and deposits, as well as losses in the form of paying Defendants for services that were not what was promised to Plaintiff-Parents.

192.    The foregoing unconscionable commercial practices, deception, fraud, false pretenses, false promises, and/or misrepresentations engaged in by Defendants constitute violations of the NJCFA, which have caused Plaintiff-Parents to suffer ascertainable losses.

193.    As Defendants' unconscionable commercial practices, deception, fraud, false pretenses, false promises, and/or misrepresentations have caused Plaintiff-Parents to suffer ascertainable losses, Plaintiff-Parents are entitled to treble damages, reasonable attorneys' fees, filings fees, and reasonable costs of suit.

**WHEREFORE**, Plaintiffs S.R.B., a minor infant by and though her parents and natural guardians Sean and Stephanie Burns (h/w), and Sean and Stephanie Burns (h/w), respectfully request that this Honorable Court enter judgment in their favor and against Defendants The Malvern School d/b/a The Malvern School of Voorhees, Busy Bees North America d/b/a Busy Bees Montessori and Child Care Center LLC, and BrightPath Kids d/b/a BrightPath Early Learning, LLC, jointly and severally, in an amount in excess of $75,000.00, together with treble and/or punitive damages, costs, interest, attorneys' fees, and any other such relief this Honorable Court deems just and appropriate.

**FLECK ECKERT KLEIN MCGARRY LLC**

DATE: November 3, 2025                BY:    */s/ Patrick J. Brennan*
                                            Patrick J. Brennan, Esquire
                                            222 N. Walnut Street, First Floor
                                            West Chester, PA 19380
                                            Phone: 484-402-7802 /Fax: 484-631-1302
                                            Email: pbrennan@fekmlaw.com
                                            Attorney for Plaintiffs